1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9              AT TACOMA

10   CHRISTOPHER J. HAYDO,

11                    Plaintiff,          CASE NO. 13-cv-05347 RJB

12        v.                              REPORT AND RECOMMENDATION
                                          ON PLAINTIFF'S COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of the Social Security  Noting Date: May 23, 2014
14   Administration,

15                    Defendant.

16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 18, 19, 20).

21        This claim has been in the administrative and court process for almost ten years.

22   During that time, there have been three administrative hearings and this is the third

23   judicial review.  Consistently, the ALJs have concluded that plaintiff was not disabled.

24

1   Now, after careful consideration of the entire record, this Court concludes that there is no

2   harmful error in this finding. The ALJ worked through difficult and contradictory

3   medical opinions regarding plaintiff's mental impairments and limitations and reached

4   conclusions that are supported by substantial evidence in the record.  Accordingly, the

5   Court recommends that the ALJ's decision be affirmed.

6                                   BACKGROUND

7          Plaintiff, CHRISTOPHER J. HAYDO, was born in 1972 and was 29 years old on

8   the alleged date of disability onset of February 21, 2002 (*see* Tr. 62).  Plaintiff has a GED

9   (Tr. 1096).  He previously worked as a cashier at a gas station, dishwasher and bartender

10  at a restaurant, machinist mate on a submarine in the United States Navy, welder, and

11  firefighter (Tr. 86).  He was fired from his most recent job at the gas station because he

12  was missing too much work and was accused of stealing $50 from the cash register (*see*

13  Tr. 68, 1029).

14

15         Through the date last insured ("DLI") of June 5, 2005,[1] plaintiff had at least the

16  severe impairments of "Left Inguinal Hernia; Hammertoes and Degenerative Joint

17  Disease in the Left Foot; Right Shoulder Impingement Syndrome with Right Upper

18  Extremity Neuropathic Pain due to Radiation; Substance Abuse in Remission; and

19  Attention Deficit Disorder (20 CFR 404.1520(c))" (Tr. 1126).

20  //

21

22         [1] There is a discrepancy between the ALJ's written decision, which states that the DLI is
23  June 5, 2005 (Tr. 1125), and a discussion between the ALJ and plaintiff's counsel during the
    hearing, in which the ALJ stated that the DLI was June 30, 2005, not June 5, 2005 (Tr. 1287).
24  The exact date, however, is immaterial.

1  //

2  ## PROCEDURAL HISTORY

3  On September 14, 2004, plaintiff filed an application for disability insurance

4  ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr.

5  62-68).  The application was denied initially and following reconsideration (Tr. 27-30).

6  Following a hearing, Administrative Law Judge Mary Gallagher Dilley issued a decision

7  finding plaintiff not disabled (Tr. 12-24).  This Court remanded the case to the

8  Commissioner for further administrative proceedings on September 29, 2008 (Tr. 479-

9  87).  ALJ Dilley held a second administrative hearing on November 24, 2009, and issued

10  a second decision finding plaintiff not disabled (Tr. 462-76).  This Court again remanded

11  for further proceedings related to plaintiff's mental impairments and limitations on April

12  26, 2011 (Tr. 1166-95).

13  Plaintiff's third hearing was held before Administrative Law Judge Robert

14  Kingsley ("the ALJ") on November 21, 2012, during which the ALJ took testimony from

15  medical expert Herbert Tanenhaus, M.D., and a vocational expert (*see* Tr. 1277-1315).

16  Plaintiff did not attend the hearing because he was in the hospital (*see* Tr. 1240-46).  On

17  February 28, 2013, the ALJ issued a written decision in which the ALJ concluded that

18  plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 1120-40).

19  Plaintiff chose not to file written exceptions with the Appeals Council, and the

20  ALJ's decision became the final decision of the Commissioner.  Plaintiff timely filed a

21  complaint in this Court seeking judicial review of the ALJ's written decision in May,

2013 (*see* ECF Nos. 1, 3).  Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 17, 2013 (*see* ECF Nos. 14, 15).

The issues before the Court are:  (1) whether or not the law of the case doctrine applies to the ALJ's consideration of the opinions of William Kelly, M.D., Frank Seibel, Psy.D., and Joseph P. McGonagle, Ph.D.; and (2) whether or not the ALJ properly evaluated the medical opinion evidence pertaining to plaintiff's mental impairments and limitations (*see* ECF No. 18, p. 1; ECF No. 19, pp. 1-2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1)     Whether or not the law of the case doctrine applies to the ALJ's treatment of the opinions of William Kelly, M.D., Frank Seibel, Psy.D., and Joseph P. McGonagle, Ph.D.**

Defendant argues that the Court previously considered plaintiff's arguments regarding the opinions of Dr. Kelly, Dr. Seibel, and Dr. McGonagle, and therefore should not reconsider these issues now.  Plaintiff responds that the law of the case doctrine should not be used to preclude review because the Court remanded for further administrative proceedings related to the medical evidence of his mental impairments and limitations, the Appeals Council vacated the second ALJ decision, and the ALJ held

another hearing, took new testimony, and considered new evidence about plaintiff's mental impairments.

As summarized by the Ninth Circuit, the law of the case doctrine posits "that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case . . . .'" *United States v. Park Place Assocs.*, 563 F.3d 907, 925 (9th Cir. 2009) (*quoting Arizona v. California*, 460 U.S. 605, 618 (1983)) (other citations omitted). This discretionary doctrine is founded on the policy that litigation should come to an end. *Earl Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (*quoting Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)). The Ninth Circuit has noted the following exceptions to the law of the case doctrine: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id.* (*quoting Jeffries, supra*, 114 F.3d at 1489). In addition, the Court finds persuasive authority from the Eighth Circuit concluding that when an issue is unaddressed in an original district court decision reversing and remanding a social security matter, that issue is not subject to the law of the case doctrine if the matter again comes before the district court on subsequent review. *See Brachtel v. Apfel*, 132 F.3d 417, 419-20 (8th Cir. 1997) ("The 'law of the case' doctrine is inapplicable here because the District Court did not actually decide [the particular issue subject to judicial review].").

The Court agrees with plaintiff that the law of the case doctrine does not apply here. The Court has not previously considered plaintiff's arguments regarding Dr. Kelly

(whom the ALJ refers to as "Dr. Williams") because ALJ Kingsley's decision treats this evidence differently than ALJ Dilley's second decision.  In addition, as plaintiff points out, ALJ Kingsley considered new evidence regarding plaintiff's mental impairments, including the testimony of medical expert Herbert Tanenhaus, Ph.D., and the report of examining doctor Janis Lewis, Ph.D.  The Court thus concludes that the evidence ALJ Kingsley considered was substantially different from the evidence that was before ALJ Dilley, and accordingly the law of the case doctrine is inapplicable.  *See Earl Old Person, supra*, 312 F.3d at 1039 (*quoting Jeffries, supra*, 114 F.3d at 1489).  Because the Court has not previously decided these issues, the law of the case doctrine does not apply. *See Brachtel v. Apfel*, 132 F.3d at 419-20.

**(2)     Whether or not the ALJ properly evaluated the medical opinion evidence pertaining to plaintiff's mental impairments.**

Plaintiff challenges the ALJ's evaluation of the opinions of Dr. Kelly, Dr. Seibel, Dr. McGonagle, Dr. Lewis, Thomas Clifford, Ph.D., Trevelyn Houck, Ph.D., and Dr. Tanenhaus.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews, supra*, 53 F.3d at 1039).  Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).  If the medical evidence in the record is not conclusive, sole responsibility for

resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence:  If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).  The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).  However, an ALJ may not speculate.  *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

### A.    Dr. Kelly

The record contains one treatment note from Dr. Kelly, dated December 17, 2004 (*see* Tr. 1028-32).  Plaintiff complained to Dr. Kelly that he was having difficulty focusing or paying attention and that he was diagnosed with attention deficit disorder ("ADD") as a child (Tr. 1028, 1031).  During the examination, plaintiff was alert, attentive, and cooperative (Tr. 1031).  He had normal psychomotor activity and speech; euthymic mood; fair insight and judgment; average fund of information and vocabulary; and no hallucinations, delusions, obsessions, homicidal ideations, or suicidal ideations (*id.*).  His thought process was coherent and the content was goal directed and responsive to questions; his memory was good for recent events (*id.*).  Dr. Kelly diagnosed "rule-out ADD" and assessed a global assessment of functioning ("GAF") score of 55, indicating

moderate symptoms (Tr. 1032, 1131).  The ALJ found that Dr. Kelly's GAF score was consistent with the normal findings on the mental status examination and limited plaintiff's RFC to simple, routine, repetitive tasks to accommodate his moderate symptoms (Tr. 1131-32).

Plaintiff argues the ALJ erred in relying on Dr. Kelly's opinion because the opinion was based on a cursory assessment, Dr. Kelly did not perform a mental status examination or administer any tests, and his findings were vague and preliminary. Plaintiff admits that the ALJ's limitation to simple, routine, repetitive tasks is restrictive, but he maintains that it does not address all of his concentration problems, which included difficulty with tasks that were novel or required divided attention.

There are two fatal problems with plaintiff's arguments.  First, contrary to plaintiff's assertions, the record establishes that Dr. Kelly did perform a mental status exam (*see* Tr. 1031), and the ALJ did not err in finding the GAF score was consistent with the examination findings (*see* Tr. 1131-32).  Second, although plaintiff contends he has concentration problems not accounted for in the RFC, he does not assert that Dr. Kelly's December 2004 examination findings support these additional limitations. Indeed, they do not.  Plaintiff relies instead on an examination and report from May 2008—over three years later (*see* Tr. 581-82).  While the record may support an alternative finding, it is up to the ALJ to resolve conflicts in the medical record, it is not up to this court to resolve those conflicts. As plaintiff has not shown that the ALJ was unreasonable in finding that Dr. Kelly's GAF score of 55 resulted in no more than a limitation to simple, routine, repetitive tasks, he fails to establish reversible error.  *See*

1    *Thomas, supra*, 278 F.3d at 954 (court must uphold ALJ's reasonable interpretation of the

2    evidence).

3    **B.    Dr. Seibel**

4    Dr. Seibel examined plaintiff in December 2004, conducted a mental status exam,

5    and reviewed plaintiff's function report and his physician's progress notes from June

6    through September 2004 (Tr. 391-96).  Dr. Seibel diagnosed plaintiff with depressive

7    disorder, NOS, attention-deficit/hyperactivity disorder, NOS, and history of alcohol

8    abuse and assessed a GAF score of 60 (Tr. 394).  He opined plaintiff's mental health

9    prognosis was "fairly good" and that he should benefit from psychotropic medications

10   (Tr. 395).  Dr. Seibel further opined:

11

12          His current symptoms do not appear to be severe, though they are having a
            negative impact on his level of functioning at this time. . . .  Currently, his
13          ability to focus and concentrate appears to be functioning adequately
            though he may have some difficulty in environments where there is more
14          stimuli.  His pace and persistence is mildly impaired due to depression,
            particularly at decreased energy.  The claimant appears able to follow both
15          simple and complex instructions.  He also appears able to interact
            appropriately with others, including supervisors and coworkers.  The
16          claimant's ability to tolerate additional stress is somewhat compromised
            due to his symptoms of depression and ongoing medical difficulties.
17

18   (Tr. 395-96).  The ALJ gave Dr. Seibel's opinions great weight because he examined

19   plaintiff and his opinion was consistent with his mental status examination findings and

20   other mental status examinations in the record from the same time period (Tr. 1136).

21   Plaintiff argues Dr. Seibel's opinion cannot serve as a basis for the ALJ's RFC

22   finding because it is vague and not based on any testing.  Specifically, plaintiff argues

23   that it is unclear what Dr. Seibel meant by "severe" and "negative impact" when he found

24

1    that plaintiff's "current symptoms do not appear to be *severe*, though they are having a

2    *negative impact* on his level of functioning at this time" (Tr. 395-96 (emphases added)).

3    Plaintiff also contends Dr. Seibel did not explain why plaintiff had difficulty with

4    concentration in the low stimulus environment of his psychological evaluation or what he

5    meant by "more stimuli" when he found that plaintiff "may have some difficulty in

6    environments where there is *more stimuli*" (Tr. 396 (emphasis added)).  Plaintiff further

7    asserts Dr. Seibel did not explain the basis for his opinion that plaintiff's persistence and

8    pace were "mildly" impaired due to depression.  In short, plaintiff attacks Dr. Seibel's

9    report itself, not the ALJ's finding that the report is consistent with the mental status

10   examinations from the same time period.

11

12          This Court previously found "no ambiguity sufficient here to require the ALJ to

13   have sought additional clarification or to overturn his evaluation of Dr. Seibel's report"

14   (Tr. 1181).  Despite the newly admitted evidence from Dr. Lewis and Dr. Tanenhaus, this

15   finding remains true today, particularly when Dr. Seibel's opinions are read in context.

16   Although Dr. Seibel did not explain exactly how plaintiff's symptoms negatively

17   impacted his level of functioning or why his persistence and pace were mildly impaired,

18   it was well within the ALJ's authority to resolve these ambiguities by finding Dr. Seibel

19   overall felt plaintiff's problems largely fell in the area of tolerating stress and persisting

20   despite depression.  The ALJ reasonably accommodated these limitations in plaintiff's

21   RFC by limiting him to a "consistent work environment in terms of setting routine with

22   no extreme stress" and "simple routine repetitive tasks, but no tasks requiring a

23   manufacturing style production pace" (*see* Tr. 1129).  The same can be said for Dr.

24

1    Seibel's opinion that plaintiff may have difficulty in environments with "more stimuli";

2    the ALJ reasonably resolved any ambiguity regarding "more stimuli" by limiting plaintiff

3    to a routine environment with no extreme stress (*see id.*).  Finally, as defendant argues,

4    plaintiff misinterprets Dr. Seibel's report in arguing that the doctor did not explain why

5    plaintiff had difficulty with concentration during the psychological evaluation; rather, Dr.

6    Seibel found that during the examination, plaintiff's "ability to focus and concentrate

7    appear[ed] to be functioning adequately" (Tr. 396).

8         In sum, Dr. Seibel's opinion is substantial evidence supporting the ALJ's RFC

9    finding, and plaintiff fails to establish error in the ALJ's weighing of the opinion.  *See*

10   *Bayliss, supra*, 427 F.3d at 1214 n.1 (all of the ALJ's determinative findings must be

11   supported by substantial evidence) (citation omitted); *see also Magallanes, supra*, 881

12   F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance,

13   and is such "'relevant evidence as a reasonable mind might accept as adequate to support

14   a conclusion.'") (citation omitted).

15   **C.    Dr. McGonagle**

16        In May 2008, nearly three years after plaintiff's DLI, Dr. McGonagle provided an

17   evaluation of plaintiff's cognitive functioning (Tr. 576-82).[2]  The ALJ did not discuss this

18   opinion.  Plaintiff argues that the ALJ erred by ignoring this opinion because although

19   Dr. McGonagle's report post-dates the DLI, it is relevant to plaintiff's functional

20   _____

21        [2] As this Court previously noted, it appears this evaluation may have been conducted by
     Scott Hunt, M.A. (*see* Tr. 576-82).  For the reasons discussed herein, however, the actual author
     of the report is not relevant to resolution of this issue.

limitations given the long-standing nature of his condition.  *See Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988) (holding that post-DLI evidence is relevant to evaluation of the pre-DLI condition); *accord Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007).

This Court previously found that ALJ Dilley did not err by failing to discuss Dr. McGonagle's opinion because there was nothing in the evaluation to indicate that Dr. McGonagle's opinion concerned a period other than the one at the time of the report's issuance (*see* Tr. 1183 (*citing* Tr. 576-82)).  This finding remains correct today.  Neither plaintiff's arguments nor the additional evidence incorporated into the record since ALJ Dilley's second decision establishes otherwise.  Moreover, as this Court previously found, even if Dr. McGonagle's opinions did relate back to the relevant time period, the report did not provide any opinion regarding specific work-related limitations, and therefore any error in not discussing Dr. McGonagle's opinion was harmless (*see id.* (*citing Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion), and *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (opinion of psychiatrist who examines claimant after expiration of his or her disability insured status is entitled to less weight than that of psychiatrist who completed contemporaneous examination)).

**D.  Dr. Lewis**

The ALJ gave little weight to Dr. Lewis's opinion (Tr. 1136-37).  Dr. Lewis examined plaintiff in September 2011, over six years after plaintiff's DLI (Tr. 1248).  Dr.

Lewis reviewed plaintiff's records and administered a mental status exam and other tests (*id.*).  She diagnosed ADD by history, alcohol dependence by history, major depression, somatoform disorder, personality disorder NOS (with antisocial, paranoid, obsessive/compulsive and borderline traits), and assessed a GAF of 47, which indicates some serious symptoms (Tr. 1256, 1136).  She opined plaintiff had numerous limitations as of January 2005, which was prior to his DLI (*see* Tr. 1255-73).  For example, she opined that plaintiff met several listings because he had marked restriction in his activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace (Tr. 1263, 1273).  She also opined that plaintiff had marked impairments in his ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without unreasonable rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; and moderate limitations in his ability to understand, remember, and carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, respond appropriately

1   to changes in the work setting, be aware of normal hazards and take appropriate

2   precautions, and set realistic goals or make plans independently of others (Tr. 1259-61).[3]

3        As an initial matter, the parties dispute whether, given the length of time between

4   plaintiff's DLI and Dr. Lewis's examination, her report should be evaluated under the

5   legal standard for examining doctors or for non-examining doctors.  *See Magallanes,*

6   *supra*, 881 F.2d at 754 ("Dr. Fox had no direct personal knowledge of Magallanes's

7   condition prior to September 1985, and was thus scarcely different from any non-treating

8   physician with respect to that time period.").  The Court need not resolve this question,

9   however, because even applying the higher standard, the ALJ's rationale is legally

10  sufficient and supported by substantial evidence, as discussed below.

11       The ALJ must provide "clear and convincing" reasons for rejecting the

12  uncontradicted opinion of either a treating or examining physician or psychologist.

13  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d

14  418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).  Even if a

15  treating or examining physician's opinion is contradicted, that opinion can be rejected

16  only "for specific and legitimate reasons that are supported by substantial evidence in the

17  record."  *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043;

18  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ can accomplish this by

19  "setting out a detailed and thorough summary of the facts and conflicting clinical

---

[3] Dr. Lewis assessed additional limitations, which will be discussed below, as necessary.

evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes, supra*, 881 F.2d at 751).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

The ALJ provided an extensive summary of Dr. Lewis's opinions and then offered several reasons for assigning them little weight. First, the ALJ found:

> [H]er opinion was offered in 2011, over six years after the date last insured. Although she attempts to refer back to the relevant period, it is clear that she is basing her opinion on the claimant's presentation at the examination and not on his past behavior and reports. She cites to his defensiveness, derailed speech, and bristling when redirected. These characteristics are clearly based on her observations of the claimant in 2011 and not on his past behaviors. In addition, she references his slow pace which is how he presented at her examination; this is not noted in records from the relevant period. She relies on the results from the tests she conducted to establish that the claimant has a personality disorder and was not malingering; this does not show how the claimant was functioning in 2002-2005.

(Tr. 1137). In other words, the ALJ found that Dr. Lewis's report was internally inconsistent. *See Morgan, supra*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within and between physicians' reports).

Plaintiff argues the ALJ's finding is not supported by substantial evidence because Dr. Lewis relied on a review of plaintiff's medical records and history, as well as on her

1  observations, which she had the expertise to relate back to the relevant period.

2  Regardless of whether Dr. Lewis also relied on plaintiff's records, however, plaintiff

3  offers nothing more than an alternative interpretation of the evidence.  As noted above,

4  the ALJ is responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r*

5  *Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008), and when evidence reasonably

6  supports either confirming or reversing the ALJ's decision, the Court may not substitute

7  its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

8  The ALJ reasonably found that Dr. Lewis's opinion reflected her observations during the

9  examination because medical evidence from before his DLI does not reference

10  defensiveness, derailed speech, bristling when redirected, or slow pace (*see, e.g.*, Tr. 391-

11  96, 1018-19, 1028-32).  As such, the ALJ's first specific, legitimate reason for giving Dr.

12  
13  Lewis's opinion little weight is supported by substantial evidence.

14      Second, the ALJ rejected Dr. Lewis's opinion that plaintiff would not be able to

15  work in a structured setting because he "essentially did that in the Navy and was 'boarded

16  out' and received a general discharge" (Tr. 1258).  Specifically, the ALJ found that Dr.

17  Lewis did not account for plaintiff's alcohol usage when she "opined that the claimant's

18  discharge from the Navy and his DUI's show he was having disabling symptoms from his

19  
20  mental health impairments as early as 2002" (Tr. 1137).  Because plaintiff reported he

21  drank from 1995 until 2005 and would drink to the point of blacking out, the ALJ found

22  it was "quite likely that his difficulty following structure in the Navy was because of his

23  alcohol abuse and not any mental health impairment" (*id.*).

24

1    Plaintiff contends the ALJ provided no support for his conclusion, which is

2    nothing more than his own opinion.  As defendant points out, however, substantial

3    evidence supports the ALJ's conclusion.  For example, plaintiff reported to Dr. Seibel

4    that his heaviest period of drinking was when he was diagnosed with cancer while in the

5    Navy (Tr. 393).  During his court-mandated alcohol treatment following his second DUI

6    in 2005, plaintiff reported "that he was drinking to excess while he was fighting cancer

7    [in the Navy].  He explained that he drank as much as two fifth[s] of whiskey a day and

8    usually drank one case of beer and most of a fifth of whiskey every day" (Tr. 1016).

9    Accordingly, the ALJ did not improperly find that Dr. Lewis's opinion regarding the

10   Navy was inconsistent with plaintiff's alcohol use during that time.  Also, plaintiff has

11   not cited the Court to any evidence in the record to contradict the ALJ's finding.

12

13    Third, the ALJ discounted Dr. Lewis's opinion because it was inconsistent with

14   Dr. Seibel's opinion:  "Dr. Lewis finds many more limitations than Dr. Seibel did and it

15   is not likely that her opinion some six years later is a more accurate reflection than Dr.

16   Seibel's opinion which was offered during the relevant period" (Tr. 1137).  Plaintiff

17   contends Dr. Lewis's evaluation and report were far more comprehensive and detailed

18   than Dr. Seibel's opinion and the fact that Dr. Lewis identified more limitations is not a

19   reasonable basis for rejecting her opinion.  To the contrary, it is not improper to reject an

20   opinion where there are inconsistencies between the opinion and the medical record.  *See*

21   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record

22   properly considered by ALJ in rejection of physician's opinions).  Moreover, the ALJ

23   was entitled to give less weight to Dr. Lewis's opinion than Dr. Seibel's opinion because

24

it was rendered after plaintiff's DLI.  *See Macri, supra*, 93 F.3d at 545 (opinion of psychiatrist who examines claimant after expiration of his or her disability insured status is entitled to less weight than that of psychiatrist who completed contemporaneous examination)).

Finally, the ALJ rejected Dr. Lewis's opinion because her finding of marked limitations in plaintiff's activities of daily living was inconsistent with his ability to go shopping, perform household chores, maintain his marriage, attend school, travel, go camping, and go to wrestling training (Tr. 1137).  An ALJ may reject an opinion that is inconsistent with the claimant's level of activity.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).  Plaintiff asserts that his activities do not inherently contradict Dr. Lewis's opinion and the ALJ made unreasonable inferences about how they were performed.  The record, however, contains ample evidence upon which the ALJ could reasonably infer that plaintiff was not markedly impaired in his activities of daily living (*see, e.g.*, Tr. 1185, n. 4 (Court's prior order summarizing plaintiff's activities)).

In sum, the ALJ provided numerous specific, legitimate reasons supported by substantial evidence to give Dr. Lewis's opinion little weight.  As such, plaintiff has failed to establish harmful error on this issue.

### E.      Dr. Clifford and Dr. Houck

The ALJ gave little weight to the opinion of non-examining psychologist Dr. Clifford (Tr. 1135-36).  Dr. Clifford reviewed plaintiff's records on January 6, 2005, and

opined plaintiff had mild restriction in activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace (Tr. 162).  He found plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without unreasonable rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; and respond appropriately to changes in the work setting (Tr. 148-49).  To explain these conclusions, Dr. Clifford wrote, "The clmt is able to understand, remember and complete simple tasks, such as simple tasks at evaluation.  His mood and ADHD disorders will increase his distractibility and make complex tasks difficult.  Complex tasks should not be expected from him on a regular basis" (Tr. 150).  Dr. Clifford further opined, "His irritability will make it necessary for him to work in a setting where he works alone or with a limited number of co-workers in a slow paced environment.  He will need to work in a setting where there are consistent requirements, expectations, supervision and training" (*id.*).  On March 23, 2005, Dr. Houck affirmed Dr. Clifford's opinions (Tr. 150, 162).

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996); *Andrews, supra,* 53

1  F.3d at 1041).  However, all of the determinative findings by the ALJ must be supported

2  by substantial evidence.  *See Bayliss, supra*, 427 F.3d at 1214 n.1 (citation omitted); *see*

3  *also Magallanes, supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla,

4  less than a preponderance, and is such "'relevant evidence as a reasonable mind might

5  accept as adequate to support a conclusion.'") (citation omitted).

6      Plaintiff argues the ALJ did not provide a valid reason for rejecting Dr. Clifford's

7  opinions.  To the contrary, the ALJ referenced specific evidence in the medical record.

8  The ALJ gave Dr. Clifford's opinion little weight because it was inconsistent with Dr.

9  Kelly's mental status examination and Dr. Seibel's opinion (Tr. 1135-36).  Plaintiff does

10  not specifically address these findings in his opening brief, and therefore fails to establish

11  that they are based on an unreasonable interpretation of the record.  *See Molina, supra*,

12  674 F.3d at 1111 (plaintiff carries burden of establishing harmful error).  The ALJ also

13  found that Dr. Clifford's opinion was internally inconsistent (Tr. 1135).  *See Morgan,*

14  *supra*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within a

15  physician's report).  As the ALJ pointed out, Dr. Clifford opined plaintiff had mild

16  limitations in social functioning (Tr. 162), and then opined that he was moderately

17  limited in most aspects of social interactions, including his ability to interact

18  appropriately with the general public, accept instructions and respond appropriately to

19  criticism from supervisors, and get along with coworkers or peers (Tr. 149; *see also* Tr.

20  150 (Dr. Clifford's opinion that plaintiff would need to work in a setting where he works

21  alone or with a limited number of co-workers)).  Thus, the ALJ's finding regarding

1   internal inconsistency is supported by substantial evidence.  As such, plaintiff has not

2   established the ALJ erred in considering Dr. Clifford and Dr. Houck's opinions.

3   **F.     Dr. Tanenhaus**

4       The ALJ gave no weight to Dr. Tanenhaus's opinion (Tr. 1138).  Dr. Tanenhaus

5   reviewed plaintiff's records and testified at the hearing before ALJ Kingsley.  He

6   diagnosed plaintiff with ADHD and major depressive disorder (Tr. 1289, 1291).  He

7   initially opined plaintiff met the listing 12.04 for mood disorders based on Dr. Lewis's

8   report (Tr. 1290-91).  But after questioning from the ALJ regarding the reliability of Dr.

9   Lewis's evaluation given its timing, Dr. Tanenhaus retracted his opinion regarding listing

10  12.04 and instead opined plaintiff would have mild limitations in his activities of daily

11  living, moderate limitations in his ability to maintain social interactions, and marked

12  limitations in his ability to maintain adequate pace (Tr. 1292-96).  He opined plaintiff

13  would have greater limitations in these areas if his physical impairments were included

14  (Tr. 1300-01).  Dr. Tanenhaus also opined, based on Dr. Clifford's opinion, that plaintiff

15  would have moderate to marked limitations in his ability to sustain an ordinary routine

16  without special supervision (Tr. 1299).  He opined that as of plaintiff's DLI, plaintiff

17  would be unable to work because of his irritability and his need for a slow pace and close

18  supervision (Tr. 1301).

19      As noted above, an ALJ "may reject the opinion of a non-examining physician by

20  reference to specific evidence in the medical record." *Sousa, supra*, 143 F.3d at 1244

21  (citation omitted).  Here, the ALJ rejected Dr. Tanenhaus's opinion because his testimony

22  did not show a thorough review of the record, he relied on Dr. Lewis's report from many

1    years after the DLI, he changed his opinion during his testimony, he relied heavily on the

2    statements from plaintiff's wife that referenced current symptoms and were inconsistent

3    with other evidence in the record, and his opinion was inconsistent with a longitudinal

4    review of the records during the relevant time period (Tr. 1138).

5          Despite plaintiff's arguments to the contrary, the Court concludes that the ALJ

6    referred to specific medical evidence in his consideration of Dr. Tanenhaus's opinion and

7    thus did not commit harmful error.  The ALJ reasonably concluded that Dr. Tanenhaus

8    did not thoroughly review the record because he initially relied on Dr. Lewis's report but

9    then admitted that her examination would not have been instructive to plaintiff's

10   functioning six years earlier (Tr. 1292).  Dr. Tanenhaus also attempted to rely on Dr.

11   Seibel's report for his conclusion that plaintiff's activities of daily living were markedly

12   impaired, but then retracted this reliance after re-reading Dr. Seibel's report, which did

13   not support such limitations (Tr. 1293-94).  And although plaintiff contends Dr.

14   Tanenhaus properly relied on Dr. Lewis's report, Dr. Tanenhaus's own testimony

15   establishes that her examination would not support her opinions regarding plaintiff's

16   functioning prior to his DLI (Tr. 1292).

17        Furthermore, the case plaintiff relies on to argue the ALJ's last reason—that Dr.

18   Tanenhaus's opinion was inconsistent with a longitudinal review of the records during

19   the relevant time period—was impermissibly vague, *Embrey v. Bowen*, 849 F.2d 418,

20   421-22 (9th Cir. 1988), involved a treating physician, not a reviewing doctor.  Moreover,

21   given that this case involves very few records prior to plaintiff's DLI, it is readily

22   apparent that the ALJ was referring to Dr. Kelly's treatment notes and Dr. Seibel's report.

*See Magallanes, supra*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").  It was not inappropriate for the ALJ to give greater weight to Dr. Kelly's and Dr. Seibel's opinions because they treated and examined plaintiff.  *See Lester, supra*, 81 F.3d at 830 (in general, more weight should be given to the opinion of a treating or examining physician than to a non-examining physician).

   Finally, even if any of the ALJ's other reasons for rejecting Dr. Tanenhaus's opinion were erroneous, those errors would be harmless because the ALJ's decision would still be supported by substantial evidence just discussed.  The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina, supra*, 674 F.3d at 1115 (*citing Stout, supra*, 454 F.3d at 1054 (collecting cases)). The Court noted multiple instances of the application of these principles.  *Id*. (collecting cases).  The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted).  The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case."  *Id.*  The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'"  *Id.* (*quoting Carmickle, supra*, 533 F.3d at 1162) (other citations omitted).  The court noted the necessity to follow the rule that courts must review cases "'without regard to errors'

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 23

that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki, supra*, 556 U.S. at 407 (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

In sum, plaintiff has not established harmful error in the ALJ's consideration of Dr. Tanenhaus's opinion.

<u>CONCLUSION</u>

For the stated reasons and based on the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 23**,** 2014, as noted in the caption.

Dated this 2nd day of May, 2014.

J. Richard Creatura
United States Magistrate Judge